**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ONETA A. DEAN, | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No. 05-44 Erie |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, J.

    Plaintiff, Oneta A. Dean, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Dean filed applications for DIB and SSI on October 23, 2002, alleging that she was disabled due to a disc bulge at L4-5 as of August 17, 2002 (Administrative Record, hereinafter "AR", 49-51, 66, 157-159).[1] Her applications were denied, and she requested a hearing before an administrative law judge ("ALJ") (AR 35-40, 42, 160-164). Following a hearing held December 11, 2003, the ALJ found that Dean was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 17-24). Dean's request for review by the Appeals Council was denied (AR 6-9), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons that follow, we will deny Plaintiff's motion and grant Defendant's motion.

### I. BACKGROUND

    Dean was born on October 21, 1952, and was fifty-one years old at the time of the ALJ's decision (AR 23, 49). She has a high school education and two years of college (AR 18, 72).

---

[1] Dean originally alleged an onset date of November 18, 1999, but amended this date to August 17, 2002 (AR 49, 176).

She has past relevant work experience as an injection molder, a CNS operator/tester, a teacher's aide, a machinist, and a laborer (AR 18, 83).

Dean began treatment with Steven Gilman, M.D., on February 29, 2000 for complaints of back pain (AR 117-118). Dr. Gilman reported that Dean had a normal neurological examination, her muscle strength was 5/5 in all muscle groups, her reflexes were symmetric, her gait and station were normal, and straight leg raise signs were negative (AR 117). She did however, exhibit some signs of mechanical back pain on flexion and extension (AR 117). Dr. Gilman noted that an MRI scan of her lumbar spine was "basically pretty normal," with no evidence of disc herniation, stenosis or spondylolisthesis (AR 118). Dr. Gilman diagnosed mechanical back pain, and recommended physical therapy and anti-inflammatory medication (AR 118).

Dean was seen by Christie Ray, M.D., on September 25, 2001 with a chief complaint of a persistent headache with sinus pressure and congestion (AR 129). Dean reported a history of chronic back pain, for which she had been on narcotic medication and muscle relaxants (AR 129). She stated that her pain was under fair control, but she did not take her medication as often as prescribed because she did not like how it made her feel (AR 129). On physical examination, Dr. Ray noted that Dean's cranial and sensory nerves were intact, and her reflexes were 2+ (AR 129). She prescribed an antibiotic for chronic sinusitis (AR 129).

On October 26, 2001, Dean presented to the emergency room with complaints of chest pain (AR 109). Myocardial imaging conducted on October 29, 2001 was negative with no evidence of ischemia or scar, and Dean's left ventricular wall motion and ejection fraction was within normal limits (AR 104). Dean also underwent a stress test, which revealed she had no symptoms and no ischemia, normal ejection fraction, and had a "[g]ood exercise tolerance" (AR 103).

Dean returned to Dr. Ray on June 25, 2002 complaining of back pain (AR 125). She reported seeing Dr. Thomas, who tried injections and numerous pain medications (AR 125). She claimed that hydrocodone made her groggy (AR 125). Dean rated her pain level as a three out of a possible ten (AR 125). Dr. Ray assessed persistent back pain, and recommended a referral to a neurosurgeon (AR 125).

On July 2, 2002, Dean was seen by John Euliano, M.D., for complaints of low back pain

and right-sided leg pain (AR 114). She reported a history of conservative treatment consisting of epidural injections which provided no relief (AR 114). On physical examination, Dr. Euliano noted back tenderness, a limited range of motion, and a positive straight leg raise test (AR 114). He further noted that a lumbar spine MRI taken on April 2, 2002 showed a very slight right neuroforaminal disc bulge at L4-5 which appeared to be touching the exiting nerve root (AR 114). Dr. Euliano opined that since she had failed conservative treatment, she more than likely needed excision of the disc (AR 114).

Dean returned to Dr. Gilman on September 18, 2002 for follow-up (AR 116). In a report to Dr. Ray, Dr. Gilman indicated that Dean was suffering from back pain that was making her "pretty miserable" (AR 116). Upon examination, he found "what look[ed] like a straight leg raise sign on the right," but it could "just be back pain and upper leg pain and not truly radicular" (AR 116). Dean's reflexes were symmetric and she had no sensory loss or problems with hip rotation (AR 116). Dr. Gilman reviewed Dean's MRI noting that it was read as showing a far lateral disc at L4-5, but stated he "[did]n't really see anything" and was not sure "that's what that is" (AR 116). Because Dean was not improving, he recommended a bone scan, a myelogram and a CT scan in order to rule out a pinched nerve (AR 116).

On September 18, 2002, Dean underwent a bone scan which showed minimal facet arthropathy at L4-5 (AR 122). Otherwise, the study was negative (AR 122).

Dean's myelogram and CT scan conducted on October 11, 2002 showed mild and moderate facet degenerative changes, with mild diffuse disc bulging and facet hypertrophy resulting in mild L2-3 and minimal L3-4 spinal canal narrowing (AR 119).

Dean returned to Dr. Gilman on November 5, 2002, and complained of pain in the right side of her back in the region of the facet joint, but no leg pain (AR 115). Dr. Gilman stated that her myelogram "look[ed] pretty clean" with no evidence of pinched nerves or herniated discs (AR 115). He indicated he was concerned about her symptoms, which "sounded like" facet arthropathy (AR 115). Dr. Gilman stated he would check a bone scan and prescribe a course of Vioxx to see if it alleviated her symptoms, and was of the opinion that surgery was not needed (AR 115).

On April 1, 2003, a state agency adjudicator completed a residual functional capacity

("RFC") assessment relative to Dean's physical capabilities (AR 142-149). The adjudicator concluded that Dean could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push/pull without limitation; and had no postural limitations (AR 143-144).

A lumbar MRI conducted on November 12, 2003 showed Dean had mild disc desiccation with diffuse bulging primarily at L4-5 (AR 150). There was no evidence of focal posterolateral disc herniation or significant spinal stenosis (AR 150).

Dean and William Reed, a vocational expert, testified at the hearing held by the ALJ on December 11, 2003 (AR 166-198). Dean testified that she suffered from pain located in her back radiating to her right leg, and had muscle spasms in her right leg (AR 176-177). She also suffered from left knee pain due to an auto accident which was temporary in nature (AR 175-177). Medications took the "edge" off the pain, but did not eliminate it completely (AR 177). Dean claimed that sitting and walking aggravated her pain (AR 177). She testified that she could walk a "couple of blocks," sit for half an hour, and lift approximately ten pounds (AR 178-179). She was able to drive, attend to her personal needs, cook, and grocery shop, and was able to clean and do laundry with the help of her daughter (AR 179-180-181, 183). She attended church and occasionally socialized (AR 180). Dean further testified however, that she had difficulty getting in the car to drive, and had pain in her leg while sitting in church (AR 183). She spent approximately half her day in a recliner and did not sleep well at night (AR 185). Dean claimed that she was unable to work since her previous positions required constant standing and bending for eight hours a day (AR 181)

The ALJ asked the vocational expert if work existed for an individual of Dean's age, education, and work history, who was able to perform work that did not require exertion above the light level, which did not involve repeated bending or constant trunk rotation (AR 187-188). The vocational expert testified that such an individual could perform work as a cashier, general office clerk and an usher/ticket taker (AR 193).

Following the hearing, the ALJ issued a written decision which found that Dean was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 17-24). Her request for an appeal with the Appeals Council was denied making the ALJ's

decision the final decision of the Commissioner (AR 6-9). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Dean met the disability insured status requirements of the Act (AR 23). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers

>from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ resolved Dean's case at the fifth step. At step two, the ALJ determined that her degenerative disc disease of the lumbar spine was a severe impairment, but determined at step three that she did not meet a listing (AR 18-19). At step four, the ALJ determined that she could not return to her past work, but retained the residual functional capacity to perform light work that did not involve repeated bending or constant trunk rotation (AR 21). At the final step, the ALJ determined that Dean could perform the jobs cited by the vocational expert at the administrative hearing (AR 22). The ALJ additionally determined that Dean's complaints concerning her impairment and its impact on her ability to work were not entirely credible (AR 23). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Dean fundamentally takes issue with the ALJ's finding that she can perform work at a light level involving no repeated bending or constant trunk rotation. She contends that this finding is contrary to the medical evidence and her testimony. It is undisputed that Dean suffers from degenerative disc disease of the lumbar spine, and the ALJ specifically found that the medical evidence demonstrated this impairment was severe (AR 18). However, disability is determined not by the mere presence of impairments, but rather by the functional restrictions placed on an individual by those impairments. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991). Thus the critical issue is the extent of Dean's residual functional capacity.

"'Residual functional capacity is defined as that which an individual is still able to do

6

despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121. Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5. Dean claims that the ALJ's assessment of the medical evidence was flawed and that the ALJ erred in his credibility determination. We address each of these arguments in turn.

   *A. Evaluation of the medical evidence*

  Dean first argues that the ALJ impermissibly relied on the state agency adjudicator's opinion, who found that she had an RFC consistent with light work. Dean correctly points out that the adjudicator was not a physician, and the ALJ incorrectly referred to the adjudicator as a physician in his decision. Taking Dean's objection at face value, it is not clear how this point demonstrates any basis for a finding of reversible error on the part of the ALJ. While it is clear that the ALJ took the state agency adjudicator's findings into consideration, it is equally apparent that this opinion was only one factor among many that the ALJ considered in arriving at his own independent determination as to Dean's RFC.

  Consistent with the required standards for determining an individual's RFC, the ALJ considered not only the state agency adjudicator's opinion, but also Dean's testimony relative to her limitations, her daily activities, and the objective medical evidence (AR 21). The ALJ noted that Dean testified she was able to walk a couple of blocks, stand for thirty minutes, sit for thirty

7

minutes, required no assistive device for ambulation, and was able to care for her personal needs, cook, do dishes, perform household chores, grocery shop and sew (AR 21). The ALJ further noted that the objective medical evidence revealed that Dean's physical examinations and tests have been relatively benign (AR 21). He observed that Dr. Gilman reported in September 2002 that her reflexes were symmetric and there was no sensory loss (AR 21). A spect bone scan revealed only minimal facet arthropathy at L4-5 on the right and was otherwise negative (AR 21). A lumbar myelogram and CT scan in October 2002 showed only mild disc and moderate facet degenerative changes with mild diffuse disc bulging and facet hypertrophy resulting in mild L2-3 and minimal L3-4 spinal canal narrowing (AR 21). The ALJ observed that Dean's most recent MRI showed no evidence of disc herniation or significant spinal stenosis (AR 21).

Further, we note that the ALJ did not give the state agency adjudicator's opinion controlling weight, since the ALJ found that Dean's RFC was less than that assigned by the adjudicator, in that he restricted her to positions that did not involve repeated bending or constant trunk rotation. Finally, we view *Beckles v. Barnhart*, 340 F. Supp. 2d 285, 290 (E.D.N.Y 2004), a case relied on by Dean, as factually distinguishable. In contrast to this case, the ALJ in *Beckles* gave the state agency report "considerable weight", which was directly contrary to the conclusion drawn by a treating physician. We therefore conclude that the ALJ's mischaracterization as to the state adjudicator's professional status is harmless when viewed in the context of the substantial evidence which otherwise supports the ALJ's decision. *See Haseler v. Massanari*, 33 Fed.Appx. 631, 634 (3rd Cir. 2002) (misstatements not dispositive and reversal not warranted in light of substantial evidence in support of the ALJ's decision).

Dean further challenges the ALJ's characterization of the medical evidence, arguing that he made speculative inferences from certain medical reports, and disregarded positive findings which would support her claim. It is undisputed that an ALJ may not set his own expertise "against that of a physician who presents competent medical evidence[,]" and is not permitted to "make speculative inferences from medical reports." *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd

Cir. 1999). Here, the ALJ's recitation of the findings contained in all of Dean's medical reports are factually accurate; Dean takes issue with the ALJ's emphasis on certain findings and his characterization of her physical examinations and the test results as "pretty benign." Contrary to Dean's argument, we find no error in this regard. The ALJ thoroughly reviewed and discussed the medical evidence in fashioning Dean's RFC, and the mere fact that Dean disagrees with his conclusion that she can perform light work does not dictate remand. Moreover, the fact that the ALJ considered the results to be "pretty benign" is not speculation on the ALJ's part; indeed, his characterization in this regard is supported by Dr. Gilman's reports. Dr. Gilman noted that the 2000 MRI scan of her lumbar spin was "pretty normal," and while her MRI in 2002 was read as showing a disc bulge, he "[did]n't really see anything" (AR 116, 188). He reported in November 2002 that her myelogram "look[ed] pretty clean," and while her bone scan showed minimal facet arthropathy at L4-5, it was otherwise negative (115, 122). Fairly read, these reports suggest that there is no objective medical evidence to support Dean's claim of disability. Consequently, the ALJ's determination in this regard is supported by substantial evidence.

      B.     *Credibility determination*

Dean also challenges the ALJ's credibility determination. Her specific contention on this point is that the ALJ failed to give her testimony of pain and inability to work the appropriate weight. An ALJ must give serious consideration to a claimant's subjective complaints of pain, even when these complaints are not completely supported by objective evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). A claimant's statements about pain, however, will not alone establish disability; there must be medical signs and laboratory findings that demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain alleged and which, when considered with all of the other evidence, leads to a conclusion that the claimant is disabled. *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir. 1984); 20 C.F.R. § 404.1529(a) (2001). In addition to the objective medical evidence, the ALJ should

consider the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. § 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2. Finally, the ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

      We find that the ALJ evaluated Dean's credibility consistent with the above standards. Although the ALJ found that the medical evidence demonstrated that she had a severe impairment which caused a significant limitation in her ability to perform work-related activities, he nonetheless concluded that her allegations were not fully credible (AR 20). In making this determination, the ALJ first observed that Dean acknowledged engaging in significant daily activities (AR 20). In this regard, the ALJ noted Dean testified that she was able to care for her personal needs, cook, do dishes, and perform chores with her daughter's help (AR 20). In her daily activities questionnaire, Dean reported she was able to dress and shower without resting, required no assistive device for ambulation, and was able to grocery shop (AR 20). The ALJ also noted that while Dean claimed significant limitations stemming from her impairment, he concluded that the evidence of record did not document physical abnormalities or functional deficits that would be considered indicative of an inability to perform jobs existing in significant numbers in the national economy (AR 20-21). The ALJ noted the clinical findings, as previously discussed, and concluded that her examinations and tests results were relatively benign (AR 21). All of the ALJ's findings are supported by the record in this regard. Moreover, we observe that the ALJ did not completely reject Dean's testimony; indeed, he accommodated her complaints in fashioning her RFC by limiting her to a restricted range of light duties, by precluding positions which involved repeated bending or constant trunk rotation (AR 21). We therefore find that

there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

### IV. CONCLUSION

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONETA A. DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-44 Erie |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### **ORDER**

AND NOW, this 4th day of August, 2005, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 10] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Oneta A. Dean. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin  
United States District Judge

cm: All parties of record. ____